UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 20-134 |
| BEVERLY McCRARY | SECTION M |

### ORDER & REASONS

Before the Court is a motion by defendant Beverly McCrary for compassionate release.[1] The United States of America (the "Government") responds in opposition.[2] Considering the parties' memoranda, the record, and the applicable law, the Court denies the motion.

I.  **BACKGROUND**

On November 20, 2020, McCrary and several co-defendants were named in an indictment filed in this Court charging them with participating in a conspiracy to defraud the Government.[3] McCrary was charged in count 1 of the indictment, which alleged that she and six of her co-defendants conspired to defraud the Government by interfering with and obstructing the lawful governmental functions of the United States Coast Guard in that they caused to be reported to the Coast Guard false representations that credential applicants had appeared for examinations, passed examinations, achieved certain examination module scores, and fulfilled requirements for endorsements, and should receive certain endorsements and credentials, all in violation of 18 U.S.C. § 371.[4] On February 24, 2022, McCrary pleaded guilty to count 1.[5]

---

[1] R. Doc. 1134.
[2] R. Doc. 1141.
[3] R. Doc. 1.
[4] *Id.* 1 at 2-13.
[5] R. Doc. 986.

A presentence investigation report ("PSR") was prepared for McCrary's sentencing hearing.[6] The report explained that McCrary, while a Coast Guard employee and continuing after her retirement, participated in the scheme by serving as an intermediary between credential applicants and another Coast Guard employee who would "fix" the applicants' exam scores in exchange for money.[7] She also used a network of lower-level intermediaries between herself and the credential applicants to advance the scheme.[8] Between 2010 and 2019, McCrary aided in fixing over 80 exam scores for mariner licenses the value of which was conservatively estimated to be over $8,000,000.[9] During the course of the Coast Guard investigation into the scheme, McCrary encouraged a mariner to lie to investigators about her involvement and she also destroyed incriminating documents.[10]

The PSR assessed McCrary's adjusted offense level to be 37, and her criminal history category as I, indicating a guideline sentencing range of 210 to 262 months' imprisonment.[11] However, the term of imprisonment was capped at 60 months by the statutory maximum sentence for the crime charged.[12] In addition, the Government filed a motion for a downward departure pursuant to U.S.S.G. § 5K1.1 in recognition of McCrary's substantial assistance, requesting a sentence reduction of between six and nine months for a total sentence of 51 to 54 months' imprisonment.[13] McCrary filed a motion for further downward variance, seeking a sentence of home confinement due to her profound remorse, age, and medical conditions identified in the PSR.[14]

---

[6] R. Doc. 1039.
[7] *Id.* at 12-16.
[8] *Id.* at 13.
[9] *Id.* at 14-18.
[10] *Id.* at 13-14.
[11] *Id.* at 27.
[12] *Id.*
[13] R. Doc. 1117.
[14] R. Doc. 1115 (quoting R. Doc. 1039 at 29); *see also* R. Doc. 1039 at 23.

After considering the PSR, the factors outlined in 28 U.S.C. § 3553, and the parties' motions, along with McCrary's multiple medical conditions as outlined in the PSR, the Court imposed a sentence of 54 months' imprisonment.[15] The Court noted that McCrary's mental and physical conditions could be addressed in an appropriate federal medical facility and a non-incarceration sentence would lead to unwarranted sentencing disparities within this case, considering the sentences imposed on other defendants of approximately the same age as McCrary and who have had their own health issues.[16] The Court also observed that a non-incarceration sentence would not provide adequate deterrence to similar white-collar crimes.[17]

After two extensions of her reporting date,[18] McCrary has been in federal custody since April 6, 2023.[19] She is currently housed at a minimum-security camp at Federal Correctional Institute ("FCI"), Marianna, Florida.[20] Her projected release date is December 22, 2026.[21]

## II. PENDING MOTION

McCrary seeks compassionate release under the 18 U.S.C. § 3582, arguing that she has exhausted her administrative remedies with the Bureau of Prisons (the "BOP")[22] and that extraordinary and compelling circumstances – specifically, her medical conditions – justify a sentence reduction.[23] McCrary indicates that she is over 65-years-old and experiencing serious deterioration in her physical and mental health due to the aging process that hinders her ability to care for herself in prison and from which she is not expected to recover.[24] She explains that she

---

[15] R. Doc. 1124.
[16] R. Doc. 1137 at 12-13.
[17] *Id.* at 13.
[18] R. Docs. 1129; 1131.
[19] R. Doc. 1141 at 5.
[20] *Id.*
[21] R. Doc. 1134 at 2.
[22] The Government does not dispute that McCrary exhausted her administrative remedies. R. Doc. 1141 at 8-9.
[23] R. Doc. 1134.
[24] *Id.* at 4.

has "type 1 diabetes, high blood pressure, severe arthritis in the back and neck as well as the early stages of Multiple Sclerosis."[25] She states that she has post-traumatic stress disorder ("PTSD") resulting from her experiences during Hurricane Katrina.[26] McCrary claims that her medical conditions have not been addressed by FCI Marianna and that she requires assistance from other inmates for memory issues and carrying items due to a lack of balance.[27] McCrary also fears contracting COVID-19 while in custody.[28]

In opposition, the Government argues that a sentencing reduction is not justified considering McCrary's extensive participation in the conspiracy to defraud the Coast Guard.[29] The Government points out that McCrary benefited from both the discretion the Government exercised in its charging decision, in that the statutory maximum term of incarceration for the crime charged drastically reduced the otherwise applicable guideline range, and the Government's motion for a downward departure that was granted in recognition of her cooperation, which further reduced the resulting sentence.[30] The Government also argues that McCrary's medical conditions do not amount to "extraordinary and compelling reasons" justifying early release.[31] The Government maintains that McCrary's medical conditions have not changed since sentencing and that all of her conditions were considered by the Court in fashioning an appropriate sentence.[32] The Government adds that the § 3553 factors do not favor a reduction in sentence considering the magnitude of McCrary's crime, the sentencing disparities that would result within this case with her early release, and the goal of deterring other would-be criminals.[33]

---

[25] *Id.* at 6.
[26] *Id.*
[27] *Id.*
[28] *Id.* at 6-7.
[29] R. Doc. 1141.
[30] *Id.* at 2-3.
[31] *Id.* at 9-15.
[32] *Id.*.
[33] *Id.* at 12-14.

## III.     LAW & ANALYSIS

"The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582." *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010). Section 3582(c), as amended by the First Step Act, provides that "[a] court, on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a),[34] if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692-93 (5th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Any reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).[35] The comments to U.S.S.G. § 1B1.13 "provide four 'extraordinary and compelling reasons' that may justify reducing a prison term: (1) medical conditions, (2) age, (3) family circumstances, and (4) 'other

---

[34] Section 3553(a) provides that, upon consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant," among other things, a "court shall impose a sentence sufficient, but not greater than necessary," to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(1)-(2).

[35] The policy statements of the Sentencing Commission have not been amended to reflect the statutory changes brought about by the First Step Act, resulting in a discrepancy as to who may bring § 3582(c) motions in court (the relevant policy statement continues to provide that a term of imprisonment may be reduced only upon a motion by the director of the BOP), which has led some courts to conclude that the Sentencing Commission does not have a policy position applicable to motions brought by defendants pursuant to the First Step Act, while others have held that the policy statement may be helpful but not dispositive in deciding such motions. *United States v. Perdigao*, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (discussing U.S.S.G. § 1B1.13 and collecting cases). The Court agrees with those courts finding that the relevant policy statement is instructive to the determination of whether "extraordinary and compelling reasons" exist to warrant a sentence reduction. *See id.*; *United States v. LeBlanc*, 2020 WL 2331690, at *2 (E.D. La. May 11, 2020); *United States v. Jones*, 2020 WL 5995689, at *2-3 (N.D. Miss. Oct. 9, 2020) (recognizing that in *United States v. Gonzalez*, 819 F. App'x 283, 284 (5th Cir. 2020), and *United States v. Bell*, 823 F. App'x 283, 284 (5th Cir. 2020), the Fifth Circuit suggested "that § 1B1.13 and the circumstances listed in its application note should be considered – if not applied," and noting that the Second Circuit in *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020), held that district courts' discretion cannot be constrained to consider as "extraordinary and compelling reasons" only those examples identified in § 1B1.13 and its application note 1(D)), *aff'd*, 859 F. App'x 708 (5th Cir. 2021). To be sure, the Fifth Circuit in *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021), observed that "[a]lthough not dispositive, the commentary to [U.S.S.G.] § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."

reasons.'" *Thompson*, 984 F.3d at 433 (quoting U.S.S.G. § 1B1.13 cmt. n.1(A)-(D) (2018)) (alterations omitted). A medical condition might be sufficiently serious to warrant release when the defendant has either a terminal illness or a condition that substantially diminishes the defendant's ability to provide self-care. *Id.* (citing U.S.S.G. § 1B1.13 cmt. n.1(A)). Age might justify a sentence reduction when a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least … 75 percent of his or her term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.1(B). Courts consider the portion of the sentence that the defendant has served in determining if the cited medical conditions are extraordinary and compelling. *Thompson*, 984 F.3d at 434-35 ("The courts that granted compassionate release … largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns."); *United States v. Chehab*, 2021 WL 5313619, at *2 (5th Cir. Nov. 15, 2021) (same).

While McCrary certainly suffers from serious medical conditions, they do not qualify as "extraordinary and compelling" so as to justify a sentence reduction. McCrary generally states that she is over 65 and experiencing deteriorating health due to the aging process, and she specifically claims that she has type 1 diabetes, high blood pressure, severe arthritis in the back and neck, multiple sclerosis, and PTSD.[36] However, none of these conditions, whether separately or in the aggregate, qualify as "extraordinary and compelling" because they are manageable, even in the COVID-19 era, and there is no proof that she cannot care for herself. *See Thompson*, 984 F.3d at 433-34 (affirming denial of compassionate release for inmate with hypertension and high cholesterol, noting that "both [conditions] are commonplace" and not "extraordinary," and finding that "it is uncertain that [the defendant] is at a significantly higher risk [of severe COVID-19

---

[36] R. Doc. 1134 at 4, 6.

symptoms] than is the general population"); *United States v. Sells*, 2022 WL 2573036, at *1 (5th Cir. July 8, 2022) ("While [the defendant] asserts that he is at a heightened risk of severe illness from COVID-19 because he suffers from asthma, diabetes, and hypertension, these conditions, when coupled with the fact that his medical conditions are well managed with medication and monitoring, are not extraordinary and compelling reasons warranting a reduced sentence."); *United States v. Ware*, 2022 WL 3137419, at *1 (5th Cir. Aug. 5, 2022) (affirming denial of compassionate release of inmate who suffered from obesity, type 2 diabetes, renal tubulointerstitial disease, uncontrolled hypertension, and cerebrovascular disease upon finding that the conditions were not extraordinary and compelling even in the COVID-19 era); *United States v. Lindquist*, 2020 WL 3513505, at *3 (E.D. Tex. June 26, 2020) (compassionate release denied because the defendant's medical conditions, including obesity, multiple sclerosis, and Vitamin D deficiency, were not terminal and did not substantially diminish the defendant's ability to provide self-care). Moreover, McCrary has served only six months of her 54-month sentence, which amounts to just 11% of the total sentence.

  Even if McCrary's conditions were "extraordinary and compelling," a district court may deny a sentence reduction if the § 3553(a) sentencing factors outweigh any extraordinary and compelling reasons that may be present. *See* 18 U.S.C. § 3582(c)(1)(A). The defendant must prove that the § 3553(a) factors warrant release. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Generally, a court will not grant compassionate release based on medical conditions that were already considered in fashioning a sentence because the § 3553(a) factors in such instances will be substantially the same as they were when the sentence was imposed. *See United States v. Thomas*, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) ("It was within the Court's discretion when weighing the § 3553(a) factors to find that [the defendant's] mental health

concerns do not support an early release, especially because it already considered the same concerns when it initially sentenced [him]."). This Court already accounted for McCrary's medical conditions and life expectancy in imposing a sentence of 54 months' incarceration. In her motion, McCrary does not identify any substantial change in her medical conditions since the time of sentencing and these conditions were already known to and considered by the Court in imposing the original sentence. McCrary's release at this juncture would create unwarranted sentencing disparities with similarly situated co-defendants involved in this same conspiracy. Further, any such release would fail to reflect the seriousness of the crime or provide adequate deterrence. Thus, while McCrary may have pleaded guilty to a non-violent offense and is likely not a danger to the community, she participated in a massive fraud on the Coast Guard while in its employ. The Court must hold her accountable for her crimes in equal measure with her co-defendants, some of whom are also of advancing age with health conditions, and particularly as a deterrent to others who may be tempted to commit similar white-collar crimes.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that McCrary's motion for compassionate release (R. Doc. 1134) is DENIED.

New Orleans, Louisiana, this 12th day of October, 2023.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　BARRY W. ASHE
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE